UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **TAVIS COARDES,** | * | Civil Action No. |
| **Plaintiff** | * | |
| v. | * | |
| **SEACOR MARINE, LLC,** | * | JUDGE: |
| **Defendant** | * | Magistrate Judge: |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## COMPLAINT

NOW COMES Plaintiff Tavis Coardes, by and through undersigned counsel, complaining of the acts of the Defendant Seacor Marine, LLC, as follows:

### A. JURISDICTION

1. This action is brought pursuant to 42 U.S.C § 1981 et seq. as amended, that prohibits retaliation against employees and prohibits discrimination against an employee because of his race.

2. Jurisdiction is specifically conferred on this Court by 42 U.S.C. § 1988.

### B. PARTIES

3. Plaintiff Tavis Coardes ("Coardes") is a citizen and resident of Charleston County, South Carolina, is over the age of 18 and is otherwise competent to bring this suit.

4. Defendant Seacor Marine, LLC, ("Seacor") is a corporation organized and existing under the laws of the State of Louisiana.

## C. FACTS GIVING RISE TO CLAIM

5.  Coardes, a black male, was hired by Seacor on or about June 11, 2012 as a marine oiler.

7.  Throughout his employment, Coardes consistently performed at or above standards set by Seacor.

8.  On or about November 1, 2013, Coardes, while on watch, first discovered that the Seabulk Carmen was circulating mud drilling fluid, otherwise known as a "flush". Coardes advised Chief Steve (last name unknown) ("Chief Steve"), a Caucasian, that he had performed such work on the Seabulk Kansas, which had a completely different design.

9.  Coardes then asked about the procedures for the flush. Chief Steve refused to explain the procedures or to demonstrate how the circulation was to be done. Since the engine room was too loud to talk, Chief Steve used "sign language" to explain the procedures.

10. Then Coardes and Chief Steve went to the galley, where it was quieter. Chief Steve informed Coardes that the alarms had been disabled. Coardes then asked about an emergency stop switch. He responded that the emergency switch would be the suction valve to the tank.

11. After returning to the engine room from the galley and concerned about the safety of such an operation, Coardes then asked about high level alarms.

12. Coardes performed the first circulation at approximately 0300 hours. Coardes immediately encountered issues. The reach rod suction valve would not open for the port forward tank, but Coardes was able to overcome this issue. Next, he circulated

the next aft tank, but again encountered a problem when he switched to the starboard forward tank. This tank did not have suction. Again, concerned about safety, Coardes woke his immediate supervisor to ask for assistance. He came down and opened a tank closer to the pump to obtain suction. It worked.

13. Coardes then informed Chief Steve of faults in the equipment, who responded, "If it has pressure, then it's circulating." When Coardes told the Chief that he could not confirm the actual pressure, Chief Steve shrugged it off and said, "Sounds like you need a new gauge." Eventually, Chief Steve did stop the work or ordered a replacement gauge, but it was used and continued to malfunction. However, the damage to the system had already been done.

14. When Coardes began his second round of tank circulation, he had no high level alarm and the pressure gauge continued to malfunction. When the mud began to spill, Coardes had none of the safety and warning mechanisms he needed to avoid the spill. They were either dysfunctional or disabled.

15. The mud overflowed through the vents and onto the deck.

16. After the clean-up, Coardes was debriefed by the captain, a Caucasian, in the pilot house. Coardes cooperated with the interview by the captain as well as with the safety inspectors.

17. After returning to shore, Seacor terminated Coardes on or about November 13, 2013.

18. Coardes contends that he was fired because (1) he had reported several safety issues and the failure of the crew to follow procedures and (2) race was a motivating factor in Seacor's decision to terminate Coardes.

19. Coardes was never properly instruction as to the proper procedures for the tank circulation. Coardes had made previous safety complaints on the Seabulk Kansas. When Coardes complained to the Chief and cited numerous safety issues and breaches in protocol on board the Seabulk Carmen, he was terminated. Instead of disclosing the issues with the safety and warning equipment, the Chief simply blamed Coardes for opening all the valves.

20. Seacor terminated Coardes asserts he was terminated because of his race and color and due to retaliation for citing numerous safety issues.

21. Coardes' citing numerous safety issues is an activity protected by 42 U.S.C. 1981.

22. Coardes was terminated because he cited and complained of numerous safety issues aboard the vessel. After his termination, Coardes later made the same complaints to a Coast Guard investigator.

23. Coardes alleges a causal connection between his protective activities and his race and his eventual termination.

24. Any assertion that Seacor terminated Coardes for cause is merely a pretext for dismissing Coardes based on his race.

25. The actions of Seacor and its management violated Coardes' civil rights under 42 U.S.C. § 1981 in that they racially discriminated against Coardes and they fired him for exercising his constitutional and otherwise protected rights.

26. The actions of Seacor were a malicious, willful and wanton disregard to the lawful rights of Coardes under Federal law.

WHEREFORE, Plaintiff Tavis Coardes respectfully prays for the following relief:

1. Judgment against Defendant Seacor for compensatory damages including loss of income in the form of back pay and future pay, bonuses, benefits and all other compensation he received as an employee of Defendant;

2. All other compensatory and punitive damages allowed by law;

3. Costs and attorney fees, if so allowed by law;

4. All issues be tried by jury;

5. Such other and further relief as the Court deems just and proper.

Respectfully Submitted,

  /s/ Mark E. Morice
**Mark E. Morice (#25949)**
**MORICE LAW FIRM, LLC**
12A Westbank Expressway
Suite 103
Gretna, Louisiana 70053
Phone: 504-366-1641
Fax: 888-588-4396
Email: moriceman@aol.com


  /s/ John S. Austin
**John S. Austin**
**Austin Law Firm, PLLC**
N.C. State Bar No. 20826
P.O. Box 30
Raleigh, North Carolina 27602
Telephone: (919) 278-7634
Facsimile (919) 424-7007
Attorney for Plaintiff
Email: John@johnaustinlaw.com
(Application for admission pro hac vice forthcoming)

5